Good morning, Your Honors. Ryan Snipp on behalf of Hector Ibarra. The court should reverse Mr. Ibarra's conviction because the district court improperly limited his ability to argue his theory of defense in closing to the jury. What did he limit him from saying? That he was tricked similar to how... He did say he was tricked. I'm sorry, Your Honor. In closing, he did argue, having read the argument, that he was tricked or that he could have been tricked. Your Honor, I don't agree entirely with that conclusion. I began Mr. Ibarra's closing statement, I was trial counsel, by saying that Mr. Ibarra's case was about Mr. Mayfield. But I argued that Mr. Mayfield tricked Elias Areola the day before, tricked Edith Howard the day of, and presented substantial evidence to the court that that was Mr. Mayfield's modus operandi. I did not argue that Mr. Ibarra's counter-surveillance drive and maneuvers that the government introduced were indicative of him similarly being tricked. I argued and But I did not argue the link between Mr. Mayfield tricking others and the defendant, Hector Ibarra. That was that. But your argument certainly suggested that if I understand it, and I guess that's why I'm glad you're the trial counsel, if I read this argument, it didn't seem to me to be anything short of saying he's in the same boat. He found himself similarly, the government has not shown intent or knowledge, as in similar cases. Well, your Honor, it's one thing to argue that the government has not shown intent or knowledge, and it's another thing to argue that the government has not shown intent or knowledge. Similarly, and draw the link between Mr. Ibarra being tricked similarly to Elias Arreola or Edith Howard to further rebut the government's absence of proof. And to judge this question, though, what additional things would you have said? I guess that's. I would have said substantial additional things. I appreciate the question, Judge Mendoza. So I would have argued that the counter-surveillance maneuvers that the government, if I'm a big picture, if we can take a step back for the evidence introduced against Mr. Ibarra by the government. The government surveilled a car in a parking lot, introduced no evidence about what Mr. Ibarra did before arriving at the parking lot. No conversation that Mr. Ibarra had with someone or a co-defendant agreeing to enter the conspiracy, agreeing to transport undocumented people. The entirety of the government's presentation and evidence against Mr. Ibarra was what he did when he got to the parking lot. He chased the parking lot, he gets into the car, he engages in counter-surveillance maneuvers, and he flees from the police. The government argued that the reasonable inference from that activity was that he had agreed to smuggle undocumented people. I sought to rebut that inference. So what would I have argued? I would have argued that the counter-surveillance maneuvers that he engaged in in the parking lot were indicative of someone transporting money. And that if you have a lot of money in the car, you'd be worried you're being followed. You'd be worried you could be robbed. And we've learned that Michael Mayfield, the co-defendant, has a modus operandi of tricking people to go to the same parking lot to pick up cash. And that Mr. Ibarra's conduct is similar to someone who thought he was picking up cash, like Elias Areola, like Edith Howard, and that that rebuts this inference that the government's drawing to show that these counter-surveillance maneuvers are indicative of alien smuggling. For example, in the government's response brief before this court, at page 33, it addresses some of these inferences from the driving maneuvers and says they were properly excluded because they did not uniquely show that Mr. Ibarra was smuggling money. Mr. Ibarra doesn't need to show that the evidence was unique to him smuggling money. That's an inference that's proper to argue to the jury and for the jury to decide. In United States v. Ramirez, before this court, this court said, it is the jury, not the court, which weighs the contradictory evidence and inferences and provides the ultimate conclusion of the facts. In the district court here, what it did was it limited argument based on the admitted evidence in light of its interpretation of excluded evidence. There is no case before this court that supports that proposition. What about the government raises an argument that it was waived, that you waived even raising this issue because you've made some statements during the trial that, in their mind, you've waived arguments? In what sense? That I admitted that this was false or that I did? You admitted that it was false. First, I did not admit that this was false. I admitted that it was bad, and it is bad, to speak plainly. It's strong evidence that the government has that it was unable to introduce because it was an illegally obtained wiretap. I argued, consistent with my brief before this court, to the district court, that the defense counsel can, as long as defense counsel introduces truthful, credible evidence, he is free to argue inferences from that truthful evidence, irrespective of whether he believes his client is guilty. And that is a core, fundamental principle in our Constitution, in our jurisprudence. Let me, if I may as well... But can he argue, and the district court suggests all of that, except he put one more, if you will, element in it. He can argue it as long as he knows that it is truthful. The evidence? No, his argument. And what the district court said is, you can't make this argument because, based on this recording, it is not truthful. It has anything to do with cash. It is not truthful, and therefore, I'm not letting anybody argue something that he knows is not true. I couldn't find a case that would suggest one could argue something that isn't true. I disagree. Okay, give me the case. This court, in United States v. Hernandez Mesa, and I quote, So long as the defendant doesn't perjure himself or present evidence that he knows to be false, he's entitled to exploit weaknesses in the prosecution's case, even though he may believe himself to be guilty. No, but that doesn't say that. It does, that's a clear point. I mean, I know what that case says, but that doesn't say that you can make an argument in your closing that you know to be false. First, I do not know Mr. Ibarra's defense to be false. Second, all of the evidence that I introduced at trial, the government and district court agreed was truthful. What inferences can be drawn from truthful evidence is a question for the jury. This court in Ramirez is explicit that it is the jury, not the court, that makes the ultimate decision of the truth of what facts occurred. Counsel, did you want to reserve any time for rebuttal? I would like to reserve some time for rebuttal, yes, Your Honor. All right, so we'll reserve the rest of your time. Thank you. May it please the court, Daniel Zip on behalf of the United States. Your Honor, the district court did not abuse its discretion by limiting the closing argument in this case, first and foremost because... First of all, you do agree that the district court did limit the argument, right? I was about to say, first of all, because the district court did not in fact limit the argument. But in your brief, you say they did limit it. I mean, I read your brief. It was pretty clear that the district court limited the argument. And you're trying to come up with a reason they could limit it. We presented three ways that this court could affirm. One of them was, I think it was the third argument we made, was that the district court did not in fact limit the argument. I guess I'm going to have to read again because I never read that in your brief at all. I had the same reading. I thought you did admit that, that the government, that the judge... Because if you argue that, what you're really saying is that there is a waiver, and therefore he needs to worry about that. But I read loose, which you did put in your brief, but that didn't have anything to do about waiving it at the time. That only had to do with if you don't present the evidence, you don't get it in. And so I'd apply that to this, but I didn't see any waiver argument in your brief. So is this a new idea? It's not, Your Honor. I don't have the specific brief, the page number on the brief, but it's definitely the third argument we made, which is that if you look at ER 48 through 50, the district court on three different times at the end of the hearing told Mr. Ibarra's defense counsel, you can make whatever argument you want. Well, with the warning... To be fair, I think the district court, immediately upon first blush, did not say that at all. That's absolutely right. Frankly, what he said after he got through thinking about it, he diminished what he said. And that's why I was wondering what your argument would be, and that's why I read your brief so closely. Certainly the court came in with a clear set of restrictions on limitations on closing argument. Defense counsel strenuously objected to those, and by the end of the hearing the court said, essentially fine, you can make whatever argument you want, but just know that if you do and you make an untruthful representation to the jury, that I will entertain a motion from the government and I will rule on that motion. You agree, though, that they weren't trying to introduce new evidence, correct? It was just that the theory is what they want to argue, right? Based upon the admitted facts, correct? Correct. The issue was what could defense counsel argue in closing argument. And what authority do you have that arguing based upon the facts that are admitted is improper here? I think in general this court has held in Spallone and the Supreme Court has held in Herring that district courts have broad discretion to control closing argument to prevent it. They do. But that we also have said in our circuit that if you unreasonably limit the argument, and as we've also said, you can only prevent the defendant from arguing incorrect statements of law and a defense theory that is not supported by the evidence, that if we do any more limitation of the argument than that, that it's structural error, not abuse of discretion. It's structural error, and therefore I have to send it back. So that's what we're really talking about. It doesn't seem to me that we're really talking about that in loose or any other place. That's what I'm trying to harmonize, if you would. Understood, Your Honor. And I think the question of whether the court has discretion is separate from whether the issue is reviewed for harmless error at the end of the day. I don't think that this court's decision in Glebe v. Frost that held it was structural error changes the fact that the district court does have broad discretion under Supreme Court precedent to limit closing argument. But that seems to miss the whole point, because if one has broad discretion, that's fine. But with even broad discretion, one can't do something that's counter to known law or counter to what is known to be or your discretion is abused. And what we're saying is, here's what the law is. They can argue anything they want except incorrect statements of law and a defense theory that is not supported by the evidence. That's the only limit. And after that, we allow them to do whatever they want to do. And so if the district court goes beyond that, they've abused their discretion and then it's structural error. I disagree, Your Honor. Okay, tell me how I'm going to interpret that any differently. Well, I'm not sure. This court has never held explicitly that those are the only reasons that courts can limit closing argument. Well, tell me another case that says I can limit it for something else. I've looked at all of them. I looked at every one of the cases as to when it could be limited, and that's where I got to. Well, the Supreme Court held in Haring that the court has broad discretion to ensure that the closing argument does not stray unduly from the mark or otherwise impedes the fair and orderly conduct of trial. And then in Spillone, this court held that the court has a duty to prevent improper arguments. It's never held that that broad discretion to limit improper arguments is somehow limited to a narrow subset. It's within the court's discretion. What do I do with American Beverage, which is American Beverage versus San Francisco? That's our case law, 2019. A district court abuses its discretion if it rests its decision on other than an erroneous legal standard or clearly erroneous factual findings. What do I do with that? I'm not familiar with that case, Your Honor, but I would say that in the thrust of the Supreme Court's decision in Haring is that the court has broad discretion to limit closing argument. Here, it can't be the case that it's an abuse of discretion for the court to know that defense counsel is about to tell the jury something that is factually untrue, and the court can't do anything about that. I mean, clearly the district court and all the parties agree that this recording showed that Mr. Ibarra was not evidence. Correct, but district courts make rulings all the time based on admissibility rulings and things that aren't actually in evidence. It's within the court's discretion to look at this video, excuse me, this audio recording, and say what you are about to present to the jury. And to be clear, what the defense wanted to argue was very specific. It's different from what Lily said to today. What he told the court was that he wanted his initial request was that he would be able to argue that Mr. Ibarra was tricked by a specific individual, by Mr. Mayfield, into believing that there was currency in his car. And that was factually untrue. And within the court's broad discretion to control closing argument, surely it has at least the discretion to prevent defense counsel from making factually untrue arguments to the jury. But the judge could have done that. The judge could have said, no, you can't argue that because that is factually untrue. That's not supported by the evidence that has been admitted. But the theory, he could have argued correct. Absolutely. And the court made it clear that it wasn't clear exactly what the defense was going to argue. And by the end, going back to the beginning of my argument here, the court said, fine, make whatever argument you want. And that could raise the risk of the government opening for rebuttal. And what the Supreme Court held in loose is that that sort of contingent pretrial or that conditional decision by the district court is simply not reviewable here because we don't know what argument he actually would have made. If he wanted to preserve that, he would have had to make the argument. And then there's a very real possibility. He couldn't argue that he was tricked by this particular individual. Mansfield, I think, was his name. He absolutely could. The court told him, you can make that argument. At the end of it, he said, make the argument. But it's going to run the risk of the government making a motion to reopen its case and the court ruling on that motion. If the motion to reopen had come, would the district court have had discretion to grant it and admit suppressed evidence? We believe he would have, yes, under the James v. Illinois line of cases that holds it. You can even suppress evidence if it's reliable and significantly furthers the truth-seeking function of criminal trials and would not encourage police misconduct. What if the court disagrees with you on that? If it doesn't change the outcome of the case, because at the end of the day, the district court gave defense counsel the opportunity to make whatever argument he wanted, and he didn't make the argument. So under loose, this court can't rule in a vacuum, as they said, and can't consider it. Loose really isn't talking about argument. Loose is talking about evidence and about whether you can put evidence in or not. And it doesn't have anything to do with argument, anything that loose says. The facts of loose are different, but this court has interpreted it in other sections. In Craig? I don't think Craig does it any more than evidence either. It's all about evidence when the case is under loose, and that I have interpreted loose thereafter. It's all about what evidence will be submitted. It's not about argument. The government wants me to move this evidentiary absolute standard over to argument, and I couldn't find any place to do that. I don't think this court has not ruled specifically as to this argument, this question of closing argument, but the two underlying reasons why loose came out the way it did apply equally here, and that the court needs the full context of what the actual argument would have been. It can't rule in a vacuum because we don't know what the defense counsel actually would have said. And then we don't know if the court would have allowed rebuttal argument. It would have turned on the nuances of what the defense's argument actually was. And importantly, we don't know that the government would have even taken the opportunity to put in a rebuttal case. They very well might not have. Counsel, can you make your final point? You're over time. I would just, again, this court, there's three reasons that the district court was within its discretion here. It did not limit the defense argument. If it did limit the defense argument, it was proper for it to do so to avoid misleading, untruthful argument to the jury. And as the court held in its lengthy motion for new trial ruling, the evidence itself was insufficient to support the argument, even putting aside the misleading aspects of the proposed argument. And we ask that you accept that. Thank you. Any additional questions? All right. Thank you. Your Honor, there's three reasons why the court should agree with the government's concession that the district court limited my closing argument. The first is I read the government's brief, just like Judge Smith does, to concede that my closing argument was limited. Second, after the trial, I filed a motion for post-trial bond, and one of the grounds I argued was that the district court would need to give Mr. Ibarra a new trial, given its improper limitation on closing argument. And the district court responded in denying bond, saying, quote, limiting closing argument, end quote, and that he, quote, stood by that decision. He characterized his ruling as, quote, limiting closing argument and that he stood by it. That's volume two of the excerpts of record, page 264. That's the district court's own words agreeing that it was limited. I think everyone in the courtroom understood that my closing argument was limited. And the third reason is given the strength of the enforcefulness of the district court's comments regarding its feelings about me making this closing argument, I don't believe it was reasonable to expect me to have crossed this line to preserve it. The district court found my argument, quote, deeply troubling. Quote, it cannot be tolerated in our system of justice. And aside from the proposed jury instruction, what defense counsel has done is not unethical, right on the line, but it hasn't crossed it at this point. Asking me to cross this ethical line when the government had already raised the California rules of professional conduct and its motion, the chief district court judge of the southern district is saying that I'm on the line but yet haven't yet crossed it to sort of expect me to go off this precipice in order to preserve this issue. Just second counsel, I think. Judge Smith has the floor. All I was going to say is that it wouldn't be the first time I've made a ruling in a district court where the attorney has crossed and said, I don't care what you're going to do, judge, I'm going to put on what I think my client has to put on, and you're going to have to make the objection you do. And when I do it and you make your objection, I will do with whatever you have to, but I'll go to the Supreme Court on you, or I'll do whatever, but you're wrong, and I'm going to, with all due respect, judge, I love you, but I don't agree, and that's where I am. That happens every time in the district court. Well, you know, respectfully, your honor, I think given the ethical comments, I can tell you personally they were chilling. I'm a court-appointed lawyer on this case. I work essentially for the district court on this case. I think that is a bridge too far. Well, I'd certainly be paid by the general, but I hope you don't work for the judge. Your honor, I'll leave you, I think, with the quote from the district court that I find most compelling in this case, that after hearing argument about the case and recognizing it was a very close case and it could result in an acquittal, the district court said, but an acquittal would be very troubling because it is, we haven't done justice. It would be essentially gaming the system and getting a result that is not warranted. That is my concern, and that concern is what animated the limitation on closing argument and the rulings that are before this court, and so for those reasons, the court should reverse. Thank you, counsel. Any additional questions? All right, thank you. Thank you to both counsel for their presentations. I appreciate that. And this matter will be submitted.
judges: SMITH, MENDOZA, UNKNOWN